# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ALLIANCE       WORKFORCE  :
SOLUTIONS, LLC,                      :
                                              :
     v.                           :
                                              :
DUSTIN CALLAN, individually,  :
KATIE    CALLAN,    individually,  :     Case No.
and                                         :
BAY TO BAY STAFFING, LLC,   :
a Florida Corporation                :

Defendants.

## COMPLAINT FOR LEGAL DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ALLIANCE WORKFORCE SOLUTIONS, LLC ("AWS"), by and

through the undersigned counsel, files this Complaint and sues Defendants DUSTIN

CALLAN, individually (hereinafter referred to as "D. CALLAN");   KATIE

CALLAN, individually (hereinafter referred to as "K. CALLAN"); and BAY TO

BAY STAFFING, LLC, a Florida Corporation (hereinafter referred to as "BBS"),

(hereinafter referred to collectively as "Defendants"), for damages, injunctive relief,

and other relief as requested herein, and alleges in support as follows:

## INTRODUCTION / NATURE OF THE ACTION

1.     AWS brings claims against the Defendants for theft of Trade Secrets, unfair

trade practices, and a host of common law business torts including without

limitation breach of contract, conversion, breach of fiduciary duty, breach of the duty of loyalty, unfair competition, and tortious interference.

2.     D. CALLAN was employed by AWS as an Account Executive from approximately November 12, 2021, until March 1, 2024.

3.     During D. CALLAN'S employment with AWS, D. CALLAN was provided extensive industry-training by AWS, which training included without limitation:

   a. Successful techniques for cold calling specific to the staffing industry;

   b. Engaging in results and service based client and potential client communication, including written correspondence specific to the staffing industry;

   c. Training for strategic geographical approaches in acquiring new staffing clients ;

   d. Training on how to navigate workers' compensation claims from a staffing company perspective;

   e. Training on the different administrative and other rules applicable and unique to staffing companies;

   f. Preparing and presenting business proposals tailored to the staffing industry;

g. Shadowing AWS' Director of Sales throughout a typical workday to learn sales techniques specific and unique to the staffing industry;

h. Shadowing AWS' Director of Sales for special assignments tailored to sales in the staffing industry;

i. Learning how to use various websites to identify and target potential staffing customers; and

j. Training on techniques on how to "reactivate" previous staffing clients.

4.    During D. CALLAN'S training, D. CALLAN was introduced or otherwise exposed to AWS' extensive industry contacts, including points-of-contact for current and former AWS clients which points of contact and even specific personnel which are unavailable through publicly available means.

5.    By way of example, anyone could conduct a web search for a client or potential client's number such as "Google telephone number of ABC company" and reach ABC company's automated front desk system. However, the only way to learn and access ABC Company's People Operations Associate's direct line to discuss and pitch business opportunities is through the staffing specific industry training and introductions AWS provided to D. CALLAN throughout his employment with AWS.

6.    Pursuant to D. CALLAN'S employment, and to ensure that the aforementioned staffing industry training was not weaponized against AWS,

3

on December 6, 2021, D. CALLAN entered into a Confidentiality, Work-For-Hire, Non-Solicitation, and Non-Competition Agreement (the "Agreement") with AWS. *See* Exhibit "A."

7.  Under the Agreement, D. CALLAN is prohibited from engaging in competition or solicitation within fifty (50) miles of any AWS location for two (2) years after the termination of D. CALLAN'S employment. *See* Exhibit "A," ¶ 4 and 5.

8.  The Agreement also contains a clause protecting AWS' confidential, proprietary, and Trade Secret protected information from disclosure to any unauthorized third-party for any reason. *See* Exhibit "A," ¶ 2.

9.  While employed with AWS, upon information and belief, D. CALLAN engaged in a deceitful and corrupt plan to take without authorization the confidential, proprietary, and Trade Secret protected information belonging to AWS.

10. To that end, D. CALLAN conspired with his wife, K. CALLAN, to incorporate and operate BBS, a business in direct competition with AWS, and utilize D. CALLAN'S access to AWS' confidential, proprietary, and Trade Secret protected information in breach of D. Callan's Agreement with AWS and to further breach the Agreement by engaging in unfair and unlawful competition against D. CALLAN'S former employer, AWS.

11.  Defendants began using D. CALLAN'S unlawful access to AWS' confidential, proprietary, and Trade Secret protected information to compete with AWS in violation of the Agreement.

12.  Upon information and belief, D. CALLAN used AWS' purloined ESI, confidential and Trade Secret protected customer information, other Trade Secret protected information including without limitation AWS' proprietary client onboarding packet, AWS' proprietary service proposal forms, AWS' proprietary "new hire" packet (e.g. instructions regarding compliance with the requirements of IRS Forms W-4 & I-9), AWS' proprietary job-order forms, AWS' proprietary job description models, AWS' clients' own job descriptions, and financial information to jump-start the growth of BBS, D. CALLAN'S and K. CALLAN'S new business in direct competition with AWS.

13.  A competing business such as BBS would benefit from AWS' industry contacts, customer pricing information, and tailored staffing industry training to solicit and interfere with AWS' existing business relations, the use of which information by a competitor would be to the detriment of AWS.

14.  D. CALLAN'S unauthorized use of AWS' confidential, proprietary, and Trade Secret protected information provided BBS with an unfair cost and time savings, as compared to AWS having to establish substantial relationships

with staffing clients in the same geographic radius as AWS using only publicly available information.

15. AWS was made aware in July of 2025 that D. CALLAN had opened a competing company, BBS, with his wife K. CALLAN as the Managing Member in Oldsmar Florida which is literally in the backyard of AWS, and upon information and belief, Defendants are using AWS' confidential, proprietary, and Trade Secret protected information and staffing industry specific training to unlawfully compete with AWS.

16. During D. CALLAN's employment with AWS, D. CALLAN accessed AWS' confidential and proprietary information, including without limitation:

    a. AWS' secure and password-protected "TempWorks" https://www.tempworks.com/ database containing, among other things, AWS' employee timesheets, proposal, rates, invoices, codes and financials.

    b. AWS' secure and password-protected "Dropbox" database containing, among other things, AWS' proprietary client onboarding packet, AWS' proprietary service proposal forms, AWS' proprietary "new hire" packet (e.g. tailored instructions regarding compliance with the requirements of IRS Forms W-4 and Forms I-9), WS' proprietary job-order forms, AWS'

proprietary job description models, and AWS' clients' own job descriptions;

c. AWS' business-client information, including industry contacts' identities, telephone numbers, and email addresses;

d. AWS' employee-client information, including identities, telephone numbers, and email addresses;

e. AWS' tax information;

f. AWS' project-tracking information;

g. a folder of pertinent information for every AWS project dating back to 11/12/2021;

h. AWS employees, including D. CALLAN receive their own password protected drop box to download and share items to clients; and,

i. These password protected AWS drop box accounts are a tool for AWS employees to save and back-up everything they do as an employee of AWS into the AWS drop box account.

17.  D. CALLAN'S conduct in using without authorization AWS' confidential, proprietary, Trade Secret protected information constitutes both theft and misappropriation.

18.    D. CALLAN'S unauthorized use of AWS' ESI violated, *inter alia*, Florida's Uniform Trade Secret Act, common law conversion principals, and a host of fiduciary and other duties that D. CALLAN owed to AWS.

19.    D. CALLAN used AWS' ESI and other proprietary confidential information, data, and Trade Secrets without authorization to jump-start D. CALLAN'S and K. CALLAN'S own competing business, BBS.

20.    D. CALLAN'S actions in creating a staffing firm and using the tailored, proprietary and confidential techniques D. CALLAN was taught during his employment with AWS grossly violated numerous laws and injures AWS.

21.    D. CALLAN'S actions are and were a clear and blatant violation of the fiduciary and other common law legal obligations D. CALLAN owed to AWS as an employee.

22.    D. CALLAN'S actions are inherently reprehensible and repugnant to the law.

23.    This lawsuit seeks to remedy D. CALLAN'S unlawful conduct.

24.    This lawsuit seeks to remedy K. CALLAN'S unlawful conduct.

25.    This lawsuit seeks to remedy BBS' unlawful conduct.

## JURISDICTIONAL ALLEGATIONS

This is an action for equitable relief including a temporary and permanent injunction and for damages in excess of $100,000.00 exclusive of interest, costs and attorney's fees. AWS is a corporation authorized to do business in Pinellas and

Hillsborough counties Which counties are within this Court's jurisdiction. AWS is a full-service staffing agency, providing services which include without limitation identifying appropriate staffing clients, identifying and then placing qualified employees with companies who need them on both a temporary and/or a permanent basis, depending on the needs of the particular AWS client.

26.    D. CALLAN was employed by AWS as an Account Executive from approximately November 12, 2021, until March 1, 2024.

27.    D. CALLAN is currently BBS' "MGR", "Registered Agent,", and "Authorized Person", and has been since approximately April 25, 2025.

28.    K. CALLAN is and was, at all times relevant to this Complaint, married to D. CALLAN.

29.    K. CALLAN is currently BBS' "AMBR" and "Authorized Person" and has been since approximately April 25, 2025.

30.    BBS is a direct competitor of AWS' in providing services which include without limitation placing qualified employees with companies who need them on both a temporary and/or a permanent basis, depending on the needs of the particular client.

31.    D. CALLAN is offering staffing-related services similar to those offered by AWS by and through BBS in a geographic location prohibited by the Agreement in place between D. CALLAN and AWS.

32.   K. CALLAN is offering staffing-related services similar to those offered by AWS by and through BBS.

33.   BBS' location in Oldsmar, Pinellas County, Florida is within this Court's jurisdiction.

34.   This Court has personal jurisdiction over all of the Parties.

35.   This Court has subject matter jurisdiction of this action, as the claims set forth herein are for violations of Florida Statutes and Florida common law.

36.   Venue is proper in that all parties reside or do business in Hillsborough and/or Pinellas County, Florida, and the conduct giving rise to this lawsuit occurred in and around Hillsborough and/or Pinellas County, Florida.

## GENERAL ALLEGATIONS

37.   D. CALLAN was employed by AWS as an Account Executive from approximately November 12, 2021, until March 1, 2024.

38.   As an Account Executive employed by AWS, D. CALLAN and AWS shared a relationship whereby: (a) AWS placed its trust and confidence in D. CALLAN; and (b) D. CALLAN accepted such trust and assumed a fiduciary duty to protect AWS and AWS' interest.

39.   During D. CALLAN'S employment with AWS, and in the regular course of that employment, D. CALLAN was provided access to AWS' proprietary, confidential and trade secret protected information.

40.  D. CALLAN utilized AWS' proprietary, confidential and trade secret protected information, in conjunction with his job duties with AWS. These duties included identifying, onboarding, and placing qualified employees with companies who need them on both a temporary and/or a permanent basis, depending on the needs of each client.

41.  D. CALLAN applied his skills to AWS' established protocols and engaged in duties that included identifying, onboarding, and placing qualified employees with companies who need them on both a temporary and/or a permanent basis, depending on the needs of each client and to effectuate AWS' business goals and objectives.

42.  But for D. CALLAN's relationship with AWS and D. CALLAN's entering into the Agreement attached as Exhibit A, AWS would not have provided access to D. CALLAN of AWS' confidential, proprietary, and trade secret protected information.

43.  The information provided to and utilized by D. CALLAN, which constitutes proprietary, confidential, and trade secret protected information includes but is not limited to:

a.  AWS' secure and password-protected "TempWorks" https://www.tempworks.com/ database containing, among other things,

11

AWS' employee timesheets, proposal, rates, invoices, codes and financials.

b. AWS' secure and password-protected "Dropbox" database containing, among other things, AWS' proprietary client onboarding packet, AWS' proprietary service proposal forms, AWS' proprietary "new hire" packet (e.g. tailored instructions regarding compliance with the requirements of IRS Forms W-4 and Forms I-9), WS' proprietary job-order forms, AWS' proprietary job description models, and AWS' clients' own job descriptions;

c. AWS' business-client information, including industry contacts' identities, telephone numbers, and email addresses;

d. AWS' employee-client information, including identities, telephone numbers, and email addresses;

e. AWS' tax information;

f. AWS' project-tracking information;

g. a folder of pertinent information for every AWS project dating back to 11/12/2021;

h. AWS employees, including D. CALLAN receive their own password protected drop box to download and share items to clients; and,

    i. These password protected AWS drop box accounts are a tool for AWS employees to save and back-up everything they do as an employee of AWS into the AWS drop box account.

44.    All this proprietary, confidential and trade secret protected information, is owned by AWS and is protected by the federal Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq.*

45.    All this proprietary, confidential, and trade secret protected information, is owned by AWS and is protected by Florida's Uniform Trade Secrets Act, F.S. §688 *et seq.*

46.    All this proprietary, confidential, and trade secret protected information, is owned by AWS and protected by the Agreement entered into between D. CALLAN and AWS. *See* Exhibit A, ¶ 2.

47.    AWS' development and exclusive use of its proprietary, confidential, and trade secret protected information, are legitimate business assets entitled to protection under federal law.

48.    AWS' development and exclusive use of its proprietary, confidential and trade secret protected information are legitimate business assets entitled to protection under Florida law.

49.    AWS' proprietary, confidential, and trade secret protected information, has contributed to and is pivotal to AWS' success in the staffing industry.

13

50. AWS' proprietary, confidential, and trade secret provides AWS with a competitive business advantage because such is not generally known or readily ascertainable by proper means by other persons who could obtain economic value from its disclosure.

51. The proprietary, confidential, and trade secret protected information, at issue could not properly be acquired or developed by others without the expenditure of many years of experience in the staffing industry, professional acumen, and thousands of marketing dollars.

52. AWS takes appropriate steps to prevent disclosure of such proprietary, confidential, and trade secret protected information to unauthorized persons. Only those at AWS with a need to use such information have access to the proprietary, confidential, and trade secret protected information.

53. Further, access to AWS' confidential information and trade secret information is restricted to only those employees of AWS who have entered into a Confidentiality, Intellectual Property, Non-Competition, Non-Solicitation, Non-Acceptance, and Trade Secret Agreement with AWS, including D. CALLAN. *See* Exhibit A.

54. During and in connection with D. CALLAN'S employment with AWS, D. CALLAN was to continue cultivate AWS' reputation in the staffing industry by assisting with the marketing and promotion of AWS' staffing services, and

when necessary, utilize AWS' proprietary, confidential, and trade secret protected information, in order for D. CALLAN to further AWS' goals and objectives.

55. AWS has dedicated substantial time, effort, and money to cultivate and establish advantageous business relationships with its staffing clients and referral sources; AWS' continued success in the staffing industry is based, in part, on these client relationships.

56. On or about April 25, 2025, Defendants D. CALLAN and K. CALLAN incorporated BBS in violation of D. CALLAN'S Agreement with AWS. *See* Exhibit "A."

57. D. CALLAN's former position as an Account Executive with AWS in order to gain an unfair competitive advantage against AWS on behalf of BBS, including locating BBS within the fifty (50) mile geographic radius prohibited by the Agreement entered into between D. CALLAN and AWS. *See* Exhibit A, ¶ 5.

58. D. CALLAN misappropriated AWS' proprietary, confidential, and trade secret-protected information – as defined both pursuant to the Agreement and pursuant to the federal Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq*. and Florida's Uniform Trade Secret Act, Fla. Stat. § 688.001 et seq. ("FUTSA") –

to unlawfully compete with AWS in violation of D. CALLAN's Agreement with AWS. *See* Exhibit A.

59.    On or about July of 2025, AWS first became aware that D. CALLAN was engaged in unlawful competition against AWS in violation of D. CALLAN's Agreement with AWS, with the assistance of K. CALLAN, and on behalf of and for the benefit of each Defendant.

60.    D. CALLAN used his access to AWS' confidential, proprietary, and trade secret protected information in violation of the Agreement in place with AWS, as well as violation of Florida law.

61.    Upon information and belief, BBS' customers consistent primarily of, if not exclusively of, former AWS customers.

62.    Upon information and belief, BBS has completed orders that were previously placed with AWS.

63.    BBS' completion of orders that were previously the business of AWS could not be achieved in a reasonably efficient and timely manner without using the confidential, proprietary, and trade secret protected techniques and possibly customer data that D. CALLAN took without authorization from AWS.

64.    Upon information and belief, BBS, D. CALLAN and K. CALLAN are improperly using AWS confidential, proprietary, and trade secret protected

information, including but not limited to AWS templates, forms and ESI to jump-start D. CALLAN'S and K. CALLAN'S competing company, BBS. AWS took the necessary steps to secure its confidential, proprietary, and trade secret protected information, data, and ESI, which upon information and belief is being used without authorization by D. CALLAN, K. CALLAN, and BBS, including inter *alia*:

a. AWS' employee timesheets, proposal, rates, invoices, codes and financials.

b. AWS' proprietary client onboarding packet, AWS' proprietary service proposal forms, AWS' proprietary "new hire" packet (e.g. tailored instructions regarding compliance with the requirements of IRS Forms W-4 and Forms I-9), WS' proprietary job-order forms, AWS' proprietary job description models, and AWS' clients' own job descriptions;

c. AWS' business-client information, including industry contacts' identities, telephone numbers, and email addresses;

d. AWS' employee-client information, including identities, telephone numbers, and email addresses;

e. AWS' tax information;

f. AWS' project-tracking information;

65. D. CALLAN'S role within AWS provided him awareness of, *inter alia*, confidential, proprietary, and trade secret protected documents and data as to the identity and contact information of AWS' customers, the customer's history with AWS, the rates AWS was charging customers (including any unpublished discounts or courtesy repeat business rates), wages paid to employees, and trade secret protected templates and forms.

66. Any ESI taken from AWS was taken without authorization by D. CALLAN.

67. AWS has been harmed by D. CALLAN'S improper and unlawful conduct in violation of his Agreement with AWS and in violation of both federal and state law. *See* Exhibit A.

68. D. CALLAN'S unlawful conduct must be stopped and AWS made whole by D. CALLAN for the damage caused by D. CALLAN to AWS.

69. K. CALLAN'S unlawful conduct must be stopped and AWS made whole by K. CALLAN for the damage caused by K. CALLAN to AWS.

70. BBS' unlawful conduct must be stopped and AWS made whole by BBS for the damage caused by BBS to AWS.

71. D. CALLAN'S unlawful actions have required AWS to engage the undersigned counsel and forensic experts to address and remedy the damage caused by D. CALLAN and AWS has agreed to pay its undersigned counsel

fees and costs, for which fees and costs AWS seeks payment from D. CALLAN.

72.   K. CALLAN'S unlawful actions have required AWS to engage the undersigned counsel and forensic experts to address and remedy the damage caused by K. CALLAN and AWS has agreed to pay its undersigned counsel fees and costs, for which fees and costs AWS seeks payment from K. CALLAN.

73.   BBS' unlawful actions have required AWS to engage the undersigned counsel and forensic experts to address and remedy the damage caused by BBS and AWS has agreed to pay its undersigned counsel fees and costs, for which fees and costs AWS seeks payment from BBS.

## COUNT I
### Violation of Defend Trade Secrets Act, 18 U.S.C. §1836 *et seq*.
### Against D. CALLAN, K. CALLAN, and BBS

74.   AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

75.   D. CALLAN knowingly, willfully, and maliciously misappropriated AWS' trade secrets protected information for the benefit of D. CALLAN.

76.   BBS knowingly accepted and used D. CALLAN'S misappropriated trade secrets protected information from AWS using same without authorization for the benefit of BBS.

77.    K. CALLAN knowingly accepted and used D. CALLAN'S misappropriated trade secrets protected information from AWS using same without authorization for the benefit of K. CALLAN.

78.    D. CALLLAN used or intended to use some or all of the aforementioned trade secrets to gain an improper competitive advantage against AWS in the course of interstate commerce.

79.    K. CALLLAN used or intended to use some or all of the aforementioned trade secrets to gain an improper competitive advantage against AWS in the course of interstate commerce.

80.    BBS used or intended to use some or all of the aforementioned trade secrets to gain an improper competitive advantage against AWS in the course of interstate commerce.

81.    Having signed a Confidentiality, Work-For-Hire, Non-Solicitation, and Non-Competition Agreement with AWS, D. CALLAN had every reason to know that his unauthorized use of Trade Secret protected templates and forms, amongst other Trade Secrets, was his acquiring, by improper means, Trade Secret protected AWS information and/or data.

82.    As BBS consists of D. CALLAN and K. CALLAN, BBS had every reason to know that BBS' taking and using of AWS' Trade Secret protected templates and forms, amongst other Trade Secret protected information, was acquired

by improper means and was the rightful Trade Secret protected information of AWS.

83.   AWS took reasonable steps to protect the secrecy of AWS' Trade Secrets including password protection, binding AWS employees with access to such Trade Secret information, including D. CALLAN, to Confidentiality, Work-For-Hire, Non-Solicitation, and Non-Competition Agreements with AWS, and allowing access to AWS' Trade Secrets only to employees with legitimate business need to have access to those Trade Secrets. *See* Exhibit A.

84.   As a result of the knowing, willful, and malicious acts of D. CALLAN, AWS has suffered and will continue to suffer actual damages.

85.   As a result of the knowing, willful, and malicious acts of K. CALLAN, AWS has suffered and will continue to suffer actual damages.

86.   As a result of the knowing, willful, and malicious acts of BBS, AWS has suffered and will continue to suffer actual damages.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN, and BBS:

a.   enjoining D. CALLAN from using AWS' proprietary data;

b.   enjoining K. CALLAN from using AWS' proprietary data;

c.   enjoining BBS from using AWS' proprietary data;

d. enjoining D. CALLAN from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by D. CALLAN;

e. enjoining K. CALLAN from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by K. CALLAN;

f. enjoining BBS from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by BBS;

g. awarding AWS a money judgment in an amount to be determined at trial;

h. awarding exemplary damages;

i. awarding recovery of AWS' attorneys' fees and costs; and

j. awarding any other relief that this Honorable Court should deem fit.

## COUNT II
### Violation of Florida Uniform Trade Secrets Act (Fla. Stat. §688.001 *et seq.*) Against D. CALLAN, K. CALLAN and BBS

87. AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

88. D. CALLAN knowingly, willfully, and maliciously misappropriated AWS' trade secrets protected information for the benefit of D. CALLAN.

89. BBS knowingly accepted and used D. CALLAN'S misappropriated trade secrets protected information from AWS using same without authorization for the benefit of BBS.

90. K. CALLAN knowingly accepted and used D. CALLAN'S misappropriated trade secrets protected information from AWS using same without authorization for the benefit of K. CALLAN.

91. D. CALLLAN used or intended to use some or all of the aforementioned trade secrets to gain an improper competitive advantage against AWS in the course of interstate commerce.

92. K. CALLLAN used or intended to use some or all of the aforementioned trade secrets to gain an improper competitive advantage against AWS in the course of interstate commerce.

93. BBS used or intended to use some or all of the aforementioned trade secrets to gain an improper competitive advantage against AWS in the course of interstate commerce.

94. Having signed a Confidentiality, Work-For-Hire, Non-Solicitation, and Non-Competition Agreement with AWS, D. CALLAN had every reason to know that his unauthorized use of Trade Secret protected templates and forms,

23

amongst other Trade Secrets, was his acquiring, by improper means, Trade Secret protected AWS information and/or data.

95.  As BBS consists of D. CALLAN and K. CALLAN, BBS had every reason to know that BBS' taking and using of AWS' Trade Secret protected templates and forms, amongst other Trade Secret protected information, was acquired by improper means and was the rightful Trade Secret protected information of AWS.

96.  AWS took reasonable steps to protect the secrecy of AWS' Trade Secrets including password protection, binding AWS employees with access to such Trade Secret information, including D. CALLAN, to Confidentiality, Work-For-Hire, Non-Solicitation, and Non-Competition Agreements with AWS, and allowing access to AWS' Trade Secrets only to employees with legitimate business need to have access to those Trade Secrets. *See* Exhibit A.

97.  As a result of the knowing, willful, and malicious acts of D. CALLAN, AWS has suffered and will continue to suffer actual damages.

98.  As a result of the knowing, willful, and malicious acts of K. CALLAN, AWS has suffered and will continue to suffer actual damages.

99.  As a result of the knowing, willful, and malicious acts of BBS, AWS has suffered and will continue to suffer actual damages.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN,

and BBS:

    a.  enjoining D. CALLAN from using AWS' proprietary data;

    b.  enjoining K. CALLAN from using AWS' proprietary data;

    c.  enjoining BBS from using AWS' proprietary data;

    d.  enjoining D. CALLAN from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by D. CALLAN;

    e.  enjoining K. CALLAN from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by K. CALLAN;

    f.  enjoining BBS from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by BBS;

    g.  awarding AWS a money judgment in an amount to be determined at trial;

    h.  awarding exemplary damages;

    i.  awarding recovery of AWS' attorneys' fees and costs; and

    j.  awarding any other relief that this Honorable Court should deem fit.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN, and BBS:

    a.  enjoining D. CALLAN from using AWS' proprietary data;

    b.  enjoining K. CALLAN from using AWS' proprietary data;

    c.  enjoining BBS from using AWS' proprietary data;

    d.  enjoining D. CALLAN from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by D. CALLAN;

    e.  enjoining K. CALLAN from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by K. CALLAN;

    f.  enjoining BBS from using AWS' trade secret protected client information to solicit business from or performing work for AWS' current and former customers who were unlawfully diverted and obtained by BBS;

    g.  awarding AWS a money judgment in an amount to be determined at trial;

    h.  awarding exemplary damages;

    i.  awarding recovery of AWS' attorneys' fees and costs; and,

    j.  awarding any other relief that this Honorable Court should deem fit.

**COUNT III**
**Breach of Fiduciary Duty**
**Against D. CALLAN Only**

100.  AWS incorporates the previous factual allegations from ¶¶ 1 – 12; 14 – 23; 26 – 28; 31; 34 – 60; 63 – 68, and; 71, as if fully set forth herein.

101.  As an Account Executive employee of AWS, D. CALLAN owed fiduciary duties to AWS during his employment with AWS under both Florida Statute§ 607.0830 *et seq* and decisional case law.

102.  As an Account Executive employee of AWS, D. CALLAN had a legal obligation to act in the best interest of AWS.

103.  AWS placed its trust and confidence in D. CALLAN as AWS' Account Executive employee to ensure that the interests of AWS were advanced and protected.

104.  D. CALLAN breached his duty to AWS by failing to deal with AWS in good faith and act solely in the benefit of AWS and instead established, set up, and currently runs a competing business, BBS.

105.  As a result of D. CALLAN'S breach of his fiduciary duty to AWS, AWS has suffered damages and will continue to suffer damages, to be determined at trial.

WHEREFORE, AWS demands judgment against D. CALLAN:

a.  awarding AWS a money judgment in the form of either actual or statutory damages;

b.  requiring disgorgement to AWS of all profits earned by D. CALLAN that arise from D. CALLAN'S breaches;

c.  requiring disgorgement to AWS of all profits earned by BBS that arise from D. CALLAN'S breaches;

d.  awarding AWS' attorneys' fees and costs; and,

e.  awarding any other relief that this Honorable Court should deem fit.

## COUNT IV
### Breach of Duty of Loyalty
### Against D. CALLAN Only

106.  AWS incorporates the previous factual allegations from ¶¶ 1 – 12; 14 – 23; 26 – 28; 31; 34 – 60; 63 – 68, and; 71, as if fully set forth herein.

107.  D. CALLAN owed a duty of loyalty to AWS as an Account Executive employee of AWS.

108.  As an Account Executive employee of AWS, D. CALLAN breached his duty of loyalty to AWS by taking advantage of information valuable to AWS in the form of AWS' confidential, proprietary, and Trade Secret protected information, to gain a personal financial benefit.

109.  D. CALLAN was not acting in good faith when D. CALLAN started and

operated D. CALLAN'S own competing staffing company, BBS.

110.   D. CALLAN was not acting in the best interest of AWS when D. CALLAN used the confidential, proprietary and Trade Secret protected information shared with him by AWS to start and operate D. CALLAN'S own competing staffing company, BBS.

111.   D. CALLAN'S role as an Account Executive employee placed him in a position of trust with AWS.

112.   D. CALLAN'S role as an Account Executive employee of AWS required D. CALLAN to subordinate his personal interests in favor of the interests of AWS.

113.   D. CALLAN breached his duty to AWS to subordinate his personal interests in favor of AWS and instead D. CALLAN engaged in unlawful conduct that financially benefitted D. CALLAN'S personal interests and violated the terms of his Agreement with AWS.

114.   D. CALLAN'S role as an Account Executive employee of AWS required D. CALLAN to act with care in making AWS' business decisions and to act with loyalty to protect and ensure the best interests of AWS.

115.   D. CALLAN breached his duty to AWS that D. CALLAN must act with care in making business decisions that were in the best interests of AWS by D. CALLAN'S engaging in unlawful conduct and a breach of his Agreement

with AWS with such conduct not being in the best interest of AWS.

116. D. CALLAN'S disloyal conduct to AWS was carried out for the personal benefit of D. CALLAN.

117. D. CALLAN'S disloyal conduct to AWS was carried out so that D. CALLAN could personally profit from his conduct.

118. As a result of D. CALLAN'S breaches of loyalty, AWS has suffered damages and will continue to suffer damages, including lost business and irreparable damage to AWS' reputation and customer relationships.

WHEREFORE, AWS demands judgment against D. CALLAN:

a. enjoining D. CALLAN and any agents of D. CALLAN, including K. CALLAN and BBS from using AWS' proprietary and Trade Secret protected data;

b. enjoining D. CALLAN from using AWS' Trade Secret protected information for the benefit of D. CALLAN and any agents of D. CALLAN, including K. CALLAN and BBS;

c. enjoining D. CALLAN and any agents of D. CALLAN, including BBS, from using AWS' confidential, proprietary and trade secret protected information including client contact and account information to solicit business from AWS' current and/or former customers;

d. enjoining D. CALLAN and any agents of D. CALLAN, including K.

CALLAN and BBS, from performing work for AWS' customers which customers were obtained due to D. CALLAN'S unauthorized conduct as described in this Complaint;

e.  awarding AWS a money judgment in an amount to be determined at trial;

f.  awarding AWS attorneys' fees and costs; and,

g.  awarding any other relief that this Honorable Court should deem fit.

## COUNT V
### Tortious Interference with Business Relationships
### Against D. CALLAN, K. CALLAN, and BBS

119.  AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

120.  AWS has and has had business relationships with numerous and various customers requesting services in several counties in Florida, including but not limited to Pinellas and Hillsborough counties, throughout AWS' nearly 20 years in business Dec 2025.

121.  D. CALLAN has been and is aware that AWS has and had advantageous business relationships with customers in several counties in Florida, including but not limited to Pinellas and Hillsborough counties, seeking services.

122.  BBS, a competing company, has been and is aware that AWS has and had advantageous business relationships with customers in several counties in

Florida, including but not limited to Pinellas and Hillsborough counties seeking AWS' services.

123. During the time period D. CALLAN was an employee of AWS, D. CALLAN became aware through his access to AWS' confidential, proprietary, and Trade Secret protected information, of AWS customers.

124. BBS was aware that AWS' confidential, proprietary, and Trade Secret protected information, and data was shared by D. CALLAN with BBS without authorization from AWS.

125. K. CALLAN was aware that AWS' confidential, proprietary, and Trade Secret protected information, and data was shared by D. CALLAN with K. CALLAN without authorization from AWS.

126. BB was aware that AWS' confidential, proprietary, and Trade Secret protected information, and data was shared by D. CALLAN with BBS without authorization from AWS.

127. Upon information and belief, D. CALLAN'S tortious interference with AWS' customer relationships has caused AWS to suffer and to continue to suffer actual damages in the form of lost income, loss of lucrative business relationships, and reputational damage.

128. Upon information and belief, K. CALLAN'S tortious interference with AWS' customer relationships has caused AWS to suffer and to continue to

suffer actual damages in the form of lost income, loss of lucrative business relationships, and reputational damage.

129. Upon information and belief, BBS' tortious interference with AWS' customer relationships has caused AWS to suffer and to continue to suffer actual damages in the form of lost income, loss of lucrative business relationships, and reputational damage.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN, and BBS:

    a.  enjoining D. CALLAN, K. CALLAN, and any agents of D. CALLAN or K. CALLAN, including BBS, from using AWS' proprietary and Trade Secret protected data;

    b.  enjoining D. CALLAN and K. CALLAN from using AWS' Trade Secret protected information for the benefit of D. CALLAN, K. CALLAN, and any agents of D. CALLAN or K. CALLAN, including BBS;

    c.  enjoining D. CALLAN, K. CALLAN, and any agents of D. CALLAN or K. CALLAN, including BBS, from using AWS' contacts to solicit business from AWS' current and/or former customers;

    d.  enjoining D. CALLAN, K. CALLAN, and any agents of D. CALLAN or K. CALLAN, including BBS, from performing work for AWS' customers which customers were obtained due to D. CALLAN'S and K.

CALLAN'S unauthorized conduct as described in this Complaint;

e. awarding AWS a money judgment in an amount to be determined at trial;

f. awarding lost profits to AWS;

g. awarding the value of lost business opportunities to AWS;

h. awarding AWS a money judgment in an amount to be determined at trial;

i. awarding punitive damages;

j. awarding AWS attorneys' fees and costs; and,

f. awarding any other relief that this Honorable Court should deem fit.

### COUNT VI
**Violation of Florida's Unfair and Deceptive Trade Practices Act**
**Fla. Stat. § 501.201 *et seq.***
**Against D. CALLAN, K. CALLAN, and BBS**

130. AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

131. The stated purpose of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") is to protect both "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

132. Through considerable expenditures of money, time, and energy, AWS has

34

developed confidential, proprietary, and Trade Secret protected information, for which AWS took efforts to keep secure and private, including but not limited to password protections for AWS' data, protections for AWS' Trade Secret protected templates, protections securing AWS' customer information, AWS' pricing information, and AWS' employee information including salary and wage information.

133. Through AWS' considerable expenditures of money, time and energy, AWS has developed continuing customer relationships and secured contracts to provide staffing work.

134. Upon information and belief, D. CALLAN has engaged in a pattern of unfair trade practices against AWS based on the allegations contained throughout this Complaint, including but not limited to D. CALLAN'S unauthorized use AWS confidential, proprietary and trade secret protected information, D. CALLAN'S breaches of his fiduciary duties as an employee of AWS, and D. CALLAN'S breaches of and duty of loyalty to benefit himself to the detriment and injury of AWS.

135. Upon information and belief, K. CALLAN has engaged in a pattern of unfair trade practices against AWS based on the allegations contained throughout this Complaint, including but not limited to K. CALLAN'S unauthorized use of AWS confidential, proprietary and trade secret protected information

obtained through D. CALLAN to the detriment and injury of AWS.

136. Upon information and belief, BBS has engaged in a pattern of unfair trade practices against AWS based on the allegations contained throughout this Complaint, including but not limited to BBS' unauthorized use of AWS confidential, proprietary and trade secret protected information obtained through D. CALLAN to the detriment and injury of AWS.

137. The above-described acts in this Count and throughout this Complaint by D. CALLAN constitute, *inter alia*, unlawful and unfair methods of competition, unconscionable acts or practices, and unfair acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §501.201, *et seq.*).

138. The above-described acts in this Count and throughout the Complaint by K. CALLAN constitute, *inter alia*, unlawful and unfair methods of competition, unconscionable acts or practices, and unfair acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §501.201, *et seq.*).

139. The above-described acts in this Count and throughout the Complaint by BBS constitute, *inter alia*, unlawful and unfair methods of competition, unconscionable acts or practices, and unfair acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §501.201, *et*

*seq.*).

140. Upon information and belief, D. CALLAN was improperly utilizing AWS' confidential, proprietary, and Trade Secret protected information and work product to engage in soliciting AWS staffing customers and then providing staffing services for those former AWS customers.

141. Upon information and belief, K. CALLAN was improperly utilizing AWS' confidential, proprietary, and Trade Secret protected information and work product to engage in soliciting AWS staffing customers and then providing staffing services for those former AWS customers.

142. Upon information and belief, BBS was improperly utilizing AWS' confidential, proprietary, and Trade Secret protected information and work product to engage in soliciting AWS staffing customers and then providing staffing services for those former AWS customers.

143. As a result of D. CALLAN'S unfair trade practices, AWS has suffered and will continue to suffer actual damages in the form of lost income, damage to existing customer relationships, and reputational damage.

144. As a result of K. CALLAN'S unfair trade practices, AWS has suffered and will continue to suffer actual damages in the form of lost income, damage to existing customer relationships, and reputational damage.

145. As a result of BBS' unfair trade practices, AWS has suffered and will

continue to suffer actual damages in the form of lost income, damage to existing customer relationships, and reputational damage.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN, and BBS:

a. declaring that D. CALLAN, by way of the above described conduct, has engaged in unfair trade practices in violation of Florida Law;

b. declaring that K. CALLAN, by way of the above described conduct, has engaged in unfair trade practices in violation of Florida Law;

c. declaring that BBS, by way of the above-described conduct, has engaged in unfair trade practices in violation of Florida Law;

d. enjoining D. CALLAN from use of AWS' proprietary data;

e. enjoining K. CALLAN from use of AWS' proprietary data;

f. enjoining BBS from use of AWS' proprietary data;

g. enjoining D. CALLAN from use of AWS' Trade Secret protected data;

h. enjoining K. CALLAN from use of AWS' Trade Secret protected data;

i. enjoining BBS from use of AWS' Trade Secret protected;

j. enjoining D. CALLAN from using AWS' confidential customer contacts to solicit business from AWS' existing customers, and/or enjoining D. CALLAN from performing work for customers obtained in the manner described throughout this Count and in this Complaint;

k. enjoining K. CALLAN from using AWS' confidential customer contacts to solicit business from AWS' existing customers, and/or enjoining K. CALLAN from performing work for customers obtained in the manner described throughout this Count and in this Complaint;

l. enjoining BBS from using AWS' confidential customer contacts to solicit business from AWS' existing customers, and/or enjoining BBS from performing work for customers obtained in the manner described in this Count and in this Complaint;

m. awarding AWS a money judgment in an amount to be determined at trial;

n. awarding AWS attorneys' fees and costs; and,

o. awarding any other relief that this Honorable Court should deem fit.

**<u>COUNT VII</u>**
**Unfair Competition**
**Against D. CALLAN, K. CALLAN, and BBS**

146. AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

147. Florida common law allows AWS to bring a cause of action for unfair competition.

148. A claim for unfair competition is an "umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Third Party Verification,*

*Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007) (*citing American Heritage Life Insurance Company v. Heritage Life Insurance Company*, 494 F.2d 3, 14 (5th Cir. 1974)); *Chassis Master Corp. v. Borrego*, 610 F. Supp. 473, 479 (S.D. Fla. 1985).

149.  Common law unfair competition claims can address, *inter alia*, any business conduct contrary to the ethical practice of commercial matters.

150.  D. CALLAN is a managing member with BBS, with BBS being a direct competitor of AWS with both BBS and AWS competing for the same shared pool of customers in need of staffing-related services.

151.  D. CALLAN has engaged in unfair competition against AWS by opening a competing staffing firm in Oldsmar, Florida, a location in the middle of two AWS offices, despite D. CALLAN having entered into an Agreement with AWS prohibiting D. CALLAN from owning or operating a staffing company in the prohibited geographic radius of fifty (50) miles from any AWS office. *See* Exhibit A, ¶ 5.

152.  K. CALLAN has engaged in unfair competition against AWS by cooperating with her husband, D. CALLAN, to open a competing staffing firm in Oldsmar, Florida, a location in the middle of two AWS offices, despite K. CALLAN'S knowledge of D. CALLAN having entered into an Agreement with AWS prohibiting D. CALLAN from owning or operating a staffing

company in the in the prohibited geographic radius of fifty (50) miles from any AWS office. *See* Exhibit A, ¶5.

153. BBS has engaged in unfair competition against AWS by opening a competing staffing firm in Oldsmar, Florida, a location in the middle of two AWS offices, despite BBS' knowledge of D. CALLAN having entered into an Agreement with AWS prohibiting D. CALLAN from owning or operating a staffing company in the in the prohibited geographic radius of fifty (50) miles from any AWS office. *See* Exhibit A, ¶ 5.

154. The actions by D. CALLAN were taken knowingly, willfully, and maliciously by D. CALLAN in order to gain an advantage over AWS in a market in which AWS also competes.

155. The actions by K. CALLAN were taken knowingly, willfully, and maliciously by K. CALLAN in order to gain an advantage over AWS in a market in which AWS also competes.

156. The actions by BBS were taken knowingly, willfully, and maliciously by BBS in order to gain an advantage over AWS in a market in which AWS also competes.

157. As a result of D. CALLAN'S unfair competitive practices, AWS has suffered damages and will continue to suffer damages, including lost business and irreparable damage to its reputation and customer relationships.

158. As a result of K. CALLAN'S unfair competitive practices, AWS has suffered damages and will continue to suffer damages, including lost business and irreparable damage to its reputation and customer relationships.

159. As a result of BBS' unfair competitive practices, AWS has suffered damages and will continue to suffer damages, including lost business and irreparable damage to its reputation and customer relationships.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN, and BBS:

a. enjoining D. CALLAN from use of AWS' confidential, proprietary and trade secret protected information;

b. enjoining K. CALLAN from use of AWS' confidential, proprietary and trade secret protected information;

c. enjoining BBS from use of AWS' confidential, proprietary and trade secret protected information;

d. enjoining D. CALLAN from soliciting and diverting customers from AWS through D. CALLAN'S unlawful use of AWS' confidential, proprietary, and Trade Secret protected information;

e. enjoining K. CALLAN from soliciting and diverting customers from AWS through K. CALLAN'S unlawful use of AWS' confidential, proprietary, and Trade Secret protected information;

    f.  enjoining BBS from soliciting and diverting customers from AWS to BBS through BBS' unlawful use of AWS' confidential, proprietary, and Trade Secret protected information;

    g.  enjoining D. CALLAN from performing work for customers solicited or diverted from AWS due to D. CALLAN'S unlawful obtaining of and use of AWS' confidential, proprietary, and Trade Secret protected customer contact information to solicit and divert business from existing AWS customers;

    h.  enjoining K. CALLAN from performing work for customers solicited or diverted from AWS due to K. CALLAN'S unlawful obtaining of and use of AWS' confidential, proprietary, and Trade Secret protected customer contact information to solicit and divert business from existing AWS customers;

    i.  enjoining BBS from performing work for customers solicited or diverted from AWS due to BBS' unlawful obtaining of and use of AWS' confidential, proprietary, and Trade Secret protected customer contact information to solicit and divert business from existing AWS customers;

    j.  awarding AWS a money judgment in an amount to be determined at trial;

    k.  awarding AWS attorneys' fees and costs, and,

    l.  awarding any other relief this Honorable Court deems fit.

## COUNT VIII
### Common Law Conversion
### Against D. CALLAN, K. CALLAN, and BBS

160.  AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

161.  Florida Courts recognize the common law tort of conversion: "Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; ... (3) inconsistent with his ownership therein." *TracFone Wireless, Inc. v. Hernandez*, 196 F.Supp.3d 1289, 1299 (S.D. Fla. 2016); *see also In re Bentley*, 600 B.R. 115, 118 (Bankr. M.D. Fla. 2018) (enumerating elements of conversion").

162.  D. CALLAN has wrongfully converted, *inter alia*, AWS' confidential, proprietary, and Trade Secret Protected information including but not limited to templates and forms, for the financial benefit of himself and for BBS.

163.  K. CALLAN has wrongfully converted, *inter alia*, AWS' confidential, proprietary, and Trade Secret Protected information including but not limited to templates and forms, for the financial benefit of herself and for BBS.

164.  BBS has wrongfully converted, *inter alia*, AWS' confidential, proprietary, and Trade Secret Protected information including but not limited to templates and forms, for the financial benefit of BBS.

165. D. CALLAN'S wrongful conversion of AWS' confidential, proprietary, and Trade Secret Protected information, including but not limited to templates and forms, among other AWS property, irreparably diminished the value of these AWS assets by impugning the uniqueness of the services and materials that AWS creates.

166. K. CALLAN'S wrongful conversion of AWS' confidential, proprietary, and Trade Secret Protected information, including but not limited to templates and forms, among other AWS property, irreparably diminished the value of these AWS assets by impugning the uniqueness of the services and materials that AWS creates.

167. BBS' wrongful conversion of AWS' confidential, proprietary, and Trade Secret Protected information, including but not limited to templates and forms, among other AWS property, irreparably diminished the value of these AWS assets by impugning the uniqueness of the services and materials that AWS creates.

168. Even if D. CALLAN is enjoined from continuing to use the stolen materials – and D. CALLAN should be so enjoined – the value of the AWS assets described herein have been irreparably damaged.

169. Even if K. CALLAN is enjoined from continuing to use the stolen materials – and K. CALLAN should be so enjoined – the value of the AWS assets described herein have been irreparably damaged.

170. Even if BBS is enjoined from continuing to use the stolen materials – and BBS should be so enjoined – the value of the AWS assets described herein have been irreparably damaged.

WHEREFORE, AWS demands judgment against D. CALLAN, K. CALLAN, and BBS:

    a. awarding AWS a money judgment in an amount to be determined at trial;

    b. awarding AWS attorney's fees and costs; and,

    c. awarding any other relief this Honorable Court deems fit.

### COUNT IX
### Civil Conspiracy
### Against D. CALLAN, K. CALLAN, and BBS

171. AWS incorporates the previous factual allegations from ¶¶ 1 – 73, as if fully set forth herein.

172. Defendants D. CALLAN and K. CALLAN entered into a scheme to use D. CALLAN'S access to AWS' confidential, proprietary, and Trade Secret Protected information to bolster and enrich their competing company, BBS, by having D. CALLAN misappropriate AWS' confidential and Trade Secret Protected information, and utilize such information to undercut, steal, and

46

otherwise interfere with AWS' relationships with its customers, to the detriment of AWS, and to the benefit of Defendants.

173. Defendants D. CALLAN and K. CALLAN overtly undertook such actions as described in the previous paragraph in order to benefit themselves to the detriment of AWS.

174. AWS suffered damages as a result of D. CALLAN'S and K. CALLAN'S actions, including without limitation reputational damage and lost profits.

WHEREFORE, AWS demands judgment against D. CALLAN and K. CALLAN:

    a. awarding AWS a money judgment in an amount to be determined at trial;

    b. awarding AWS attorneys' fees and costs; and,

    c. awarding any other relief this Honorable Court deems fit.

## COUNT X
### Breach Of Contract
### Against D. CALLAN Only

175. AWS incorporates the previous factual allegations from ¶¶ 1 – 12; 14 – 23; 26 – 28; 31; 34 – 60; 63 – 68, and; 71, as if fully set forth herein.

176. A valid contract was entered into and exists between AWS and D. CALLAN, in the form of the attached Confidentiality, Work-For-Hire, Non-Solicitation, and Non-Competition Agreement D. CALLAN entered into with AWS on or about December 6, 2021. *See* Exhibit "A."

47

177.   Under the Agreement, Mr. Callan is prohibited from engaging in competition or solicitation within fifty (50) miles of any AWS location for two (2) years after the termination of Mr. Callan's employment. *See* Exhibit "A," ¶ 4 and 5.

178.   The Agreement also contains a clause protecting AWS' confidential, proprietary, and Trade Secret protected information from disclosure to any unauthorized third-party for any reason. *See* Exhibit "A," ¶ 2.

179.   D. CALLAN violated ¶ 4 and ¶ 5 of the Agreement by opening a competing staffing agency within fifty (50) miles of an AWS office within two (2) years of the termination of Mr. Callan's employment.  *See* Exhibit B, the SunBiz incorporation date of 4-25-2025 and the address of BBS and *see* https://baytobaystaffing.com/contact for the listing of the Oldsmar address of BBS.

180.   D. CALLAN violated ¶ 2 of the Agreement by misappropriating AWS' confidential, proprietary, and Trade Secret protected information, sharing such information with K. CALLAN and BBS, and utilizing such information for the benefit of himself, and of K. CALLAN and BBS, to AWS' detriment.

WHEREFORE, AWS demands judgment against D. CALLAN:

   a.   Awarding AWS a money judgment in an amount to be determined at trial;

   b.   Enjoining D. CALLAN from violating his Agreement with AWS and not conducting business in the prohibited 50 miles radius;

c. awarding AWS attorneys' fees and costs; and,

d. awarding any other relief this Honorable Court deems fit.

Dated: October 9, 2025

Respectfully submitted,

/s/ *Christine R. Sensenig*
Christine R. Sensenig, Esquire
Florida Bar No.: 074276
Sensenig Law Firm, PA
1515 Ringling Blvd, Ste 230
Sarasota, FL 34236
P: (941) 953-2828
F: (941) 953-3018
Primary Email: csensenig@senseniglawfirm.com
Secondary Email: droginski@senseniglawfirm.com
*Counsel for Alliance Workforce Solutions, LLC*